IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

GQ SAND, LLC,

    Plaintiff and Counterclaim Defendant,  OPINION AND ORDER

  v.
                   15-cv-152-wmc

CONLEY BULK SERVICES, LLC,

    Defendant, Counterclaim Plaintiff and Crossclaim Defendant,

RANGE MANAGEMENT SYSTEMS, LLC, and

    Defendant and Counterclaim Plaintiff

NEJGID, LLC,

    Defendant, Counterclaim Plaintiff and Crossclaim Plaintiff.

---

This case is set for a jury trial commencing June 27, 2016. In advance of the final pretrial conference scheduled for June 21, 2016, the court issues the following opinion and order on the parties' motions *in limine*. (Dkt. ##180, 184, 194-195, 198, 204-208.)

## OPINION

## I. Plaintiff GQ Sand's Motions *in Limine*

### A. MIL No. 1: Limiting Expert Opinion Testimony (dkt. #204)

GQ Sand seeks an order excluding defendant CBS's expert Holly Bellmund from offering testimony about the length of time it would take for rail cars to move from one position to another. GQ Sand posits two independent bases for its motion. *First*, GQ Sand argues that Bellmund's disclosure as a *rebuttal* expert renders her opinion on the timing of train travel untimely. Bellmund was only disclosed as rebuttal expert, but she acknowledged at her deposition that her testimony on timing was independent from any

opinion offered by GQ Sand's expert Michael Wick.  In other words, the timing of train travel opinion was not in response to Wick's opinions.  From this, GQ Sand argues that Bellmund should have been disclosed as an expert on October 16, 2015, the date on which the parties were to disclose any experts for which they were proponents.  (5/28/15 Pretrial Conf. Order (dkt. #27) ¶ 2.)  In response, CBS argues that Bellmund's testimony directly counters Wick's opinion regarding CBS's reasons for terminating the Sand Supply Agreement.  (CBS's Opp'n (dkt. #225) 4.)  Specifically, Bellmund's testimony about the timing of rail transportation being a reason why CBS terminated the Agreement responds to Wick's testimony about the downturn in the fracking sand industry being the reason for the termination.

The court agrees with CBS that Bellmund's testimony is proper rebuttal testimony.  Moreover, the serving of Bellmund's report by the "respondent" deadline identified in the preliminary pretrial conference order is entirely consistent with the court's treatment of the use of the term "proponent" in the pretrial conference order to mean the party who bears the burden of proof on a particular claim (or element of a claim), whereas "respondent" refers to the party who does not bear the burden of proof. Even if this view were somehow in error, the court also agrees that CBS's serving of Bellmund's report by the respondent deadline was substantially justified under Federal Rule of Civil Procedure 37(c) to deny GQ Sand's request to strike her testimony on this topic.

*Second*, GQ also seeks exclusion of this testimony on the basis that it is unreliable under Federal Rule of Evidence 702.  Specifically, GQ Sand challenges the factual basis

for Bellmund's testimony, as well as her qualifications and experience to render such an opinion.  Here, too, CBS adequately responds to GQ Sand's challenge.  In addition to relying on GQ Sand Quisling's testimony, Bellmund also testified that she relied on information obtained from rail lines and sand mines.  Moreover, Bellmund described her experience with the rail industry during her deposition.  (CBS's Opp'n (dkt. #225) 7.)  While GQ Sand's challenges may, of course, be addressed through cross-examination, they do not serve as a basis for striking her opinions.  Accordingly, GQ Sand's motion *in limine* no. 1 is DENIED.

### B.  MIL No. 2: Other GQ Sand Contract or Potential Frac Sand Contracts (dkt. #205)

GQ Sand seeks an order excluding testimony, evidence or argument about "any potential deals and/or completed contracts or agreements to which GQ Sand was a party other than those at issue in this case."  (GQ Sand's Mot. (dkt. #205) 1.)  Specifically, GQ Sand mentions a deal it made with K3 Prop, LLC in the summer of 2014, which is the subject of another lawsuit pending in this court.  In support of its motion, GQ Sand contends that other business relationships or contracts are not relevant to the claims presented in this case, and that, even if relevant, should be excluded under Rule 403.

In response, CBS argues that evidence of GQ Sand's prior transactions is probative of GQ Sand's ability to perform under the Agreement.  Specifically, CBS argues that this evidence will support its defense that GQ Sand was not able to perform under the Agreement.  (CBS's Opp'n (dkt. #227) 2-3.)  While the court agrees that such evidence may be relevant to CBS's defense, such evidence also could be prejudicial and

3

confusing.  As such, the court will RESERVE ruling on this motion, pending argument at the final pretrial conference on the specific evidence and lines of testimony CBS seeks to admit.

### C.  MIL No. 3: Excluding Settlement Negotiations (dkt. #206)

Next, GQ Sand seeks an order excluding "specific terms of settlement negotiations for the release and settlement of the Sand Supply Agreement."  (GQ Sand's Mot. (dkt. #206) 1.)  Specifically, GQ Sand seeks to exclude a document authored by CBS, titled "Release and Hold Harmless."  (Watt Third Decl., Ex. A (dkt. #210-1).)  GQ Sand contends that such evidence should be excluded under Federal Rule of Evidence 408.

In its response, CBS agrees that such evidence constitutes a settlement negotiation under Rule 408, but argues that CBS seeks to introduce such evidence for purposes other than to prove liability, the amount of the parties' claims or to impeach with a prior inconsistent statement.  In its summary judgment opinion, the court viewed the release and related materials as falling outside of the confines of Rule 408 because it did not contemplate the specific "claim" at issue here.  (6/10/16 Op. & Order (dkt. #221) 15 n.12.)  As such, the court will RESERVE on this motion, and will hear argument on whether the evidence on its face falls within Rule 408, and, if so, whether CBS's purported use of this evidence is still allowed under the Rule.

**D. MIL No. 4: GQ Sand's Financial Information (dkt. #207)**

GQ Sand seeks an order limiting introduction of evidence of its financial circumstances to its cash-on-hand balances for February and March 2015 only.  GQ Sand anticipates that defendants will seek to introduce such evidence in support of their claim that GQ Sand lacked the ability to perform under the Sand Supply Agreement.  With that understanding in mind, GQ Sand contends that the only relevant financial information is the cash-on-hand balances.  CBS does not object to this motion.  (CBS's Resp. (dkt. #230).)  Accordingly, this motion is GRANTED as unopposed.

**E. MIL No. 5: Excluding NEJGID's Counterclaims (dkt. #208)**

As context, the court granted defendant NEJGID's motion for leave to file counterclaims relatively late in this case, after the dispositive motion deadline.  (3/11/16 Order (dkt. #145).)  After conducting discovery, GQ Sand sought leave from the court to file a summary judgment motion with respect to NEJGID's counterclaims.  (Dkt. #169.) The court denied that specific request, but directed GQ Sand to file a motion *in limine* seeking to exclude NEJGID's evidence and argument in support of its counterclaims. (5/23/16 Order (dkt. #170).)

GQ Sand posits two core reasons for dismissing NEJGID's counterclaims.  *First*, GQ Sand contends that NEJGID lacks the capacity to sue under Texas law, directing the court to certified records of the Comptroller for the State of Texas representing that NEJGID forfeited its right to transact business in the state of Texas because it had failed to pay its franchise tax.  (GQ Sand's Mot. (dkt. #208) 2 (citing Watt Second Decl., Ex.

A (dkt. #209-1).)  Under Texas law, GQ Sand explains, in forfeiting its right to transact business, NEJGID also lost its right to "sue or defend in a court of this state."  Texas Tax Code § 171.252(1).  The lack of capacity to sue in Texas courts also deprives NEJGID of the right to sue in federal court.  Fed. R. Civ. P. 17(b) ("Capacity to sue or be sued is determined . . . [for parties other than individual or corporations], by the law of the state where the court is located."); *see also Sensory Technologies, LLC v. Sensory Tech. Consultants, Inc.*, No. 13–cv–834, 2013 WL 5230700, at *2 (S.D. Ind. Sept. 17, 2013) (applying Rule 17(b)(3) to a limited liability company and looking to state law).

In response, NEJGID implicitly acknowledges that it forfeited its right to transact business because of delinquent tax payments, but submits proof that it has now paid the delinquent taxes and is now "in good standing" with the Texas Comptroller.  (Puls Decl., Ex. A (dkt. #248-1).)  Moreover, NEGJID cites to Texas caselaw for support of its request to be afforded an opportunity to cure the default, which it has now done.  (NEGJID's Opp'n (dkt. #246) 2.)   Even if the court were to find that NEGJID lacked the capacity to assert counterclaims at the time it filed such claims, it now has the capacity to do so.  Rather than move those counterclaims back to square one, the court is inclined to allow NEJGID to proceed on its claims at trial.  Additionally, if the court were to find that NEJGID lacked the capacity to sue, then it also lacks the capacity to be sued, and therefore, it is at least questionable whether GQ Sand could proceed against it on its asserted claims.  This part of GQ Sand's MIL No. 5, therefore, is DENIED.

*Second*, GQ Sand also seeks to exclude NEJGID's breach of contract counterclaim on the basis that NEJGID did not have a contract with GQ Sand to purchased frac sand,

6

but rather to split the profits of any sale that took place, and there is no evidence that the company that did have that contract with GQ Sand to sell sand somehow assigned their rights to sue to NEJGID.   NEGJID explains in its response that this argument misconstrues NEJGID's claim, which does not assert a breach of contract claim based on its clients' purchase of frac sand; rather, its claim concerns GQ Sand's failure to fulfill what it alleges *is* a contract with GQ Sand to purchase 10,000 tons of frac sand from NEJGID and then split the profits of the sale of that sand to a third party.   Obviously, the parties have a radically opposing view of the nature of their contract that may have to be resolved by the court in advance of trial or by the jury at trial.   Accordingly, the court will RESERVE on the second reason for excluding evidence and argument in support of NEJGID's counterclaim, and will require NEJGID to make a proffer of proof of the terms of the contract between the parties at the Final Pretrial Conference before allowing it to proceed with that claim.

## II. Defendant Conley Bulk Services' Motions *in Limine*

### A.  MIL No. 1: Admit Other Acts Evidence (dkt. #180)

In this motion, CBS seeks an order requesting admission of evidence of GQ Sand's past performance of other sand deals under Rule 404(b), on the basis that such evidence is "relevant to GQ Sand's knowledge (or lack thereof) of the logistics of procuring and delivering sand, which is relevant to GQ Sand's ability to perform the contract at issue here."  (CBS's Mot. (dkt. #180) 1.)   Specifically, CBS seeks to introduce evidence of three deals around the same time frame -- K3 (which was mentioned above with respect

to GQ Sand's motion *in limine*), Topps and Rockpile.  The court will RESERVE on this motion for the same reason that it reserved on GQ Sand's motion *in limine* no. 2.  The parties should be prepared to discuss the probative value and prejudicial effect of all three deals during the final pretrial conference.

### B.  MIL No. 2: Exclude Evidence Related to Certain Sand (dkt. #184)

In this motion, CBS seeks an order excluding any evidence or argument related to sand that it claims "would not have allowed GQ Sand to fulfill the contract specifications."  (CBS's Mot. (dkt. #184) 1.)  Specifically, CBS seeks to exclude evidence of WWS Sand because, it argues, that the sand would not have met the crush value, and to exclude evidence of possible sand sourced from Muskie Proppants because Muskie did not produce the 30/50 9k sand.  As the court explained at summary judgment, there are fact issues surrounding whether this sand would have met the requirements under the Agreement.  CBS, of course, may present evidence demonstrating that it did not meet the requirements, and therefore, even if it had not jumped the gun by submitting a notice of default, GQ Sand could not perform, but the court will not exclude GQ Sand from introducing evidence of its arrangements to purchase this sand and the specifications of the sand.  Accordingly, this motion is DENIED.

### C.  MIL No. 3: Exclude Evidence of Certain Sand Pricing to Prove Damages (dkt. #198)

Finally, CBS seeks an order excluding evidence of certain sand pricing to prove contract damages under Rules 401 and 701.  CBS argues that GQ Sand's reliance on

pricing data from two mines to determine its lost profits calculation is improper because "neither mine could have provided all of the sand in the Sand Supply Agreement." (CBS's Mot. (dkt. #198) 1.)  This is a regurgitation of the same argument made above. If CBS is successful in demonstrating that GQ Sand could not have performed under the contract, then its claim of damages will be moot.  If GQ Sand prevails on the contract claim, then the jury would have found in the liability phase that GQ Sand could have performed, and thus, the sand it intended to purchase and the price of that sand forms a reliable basis for calculating lost damages.  If GQ Sand lacks reliable information as to the price of the Muskie Sand, then CBS can challenge the foundation for this evidence, but the court sees no basis to strike it based on this motion.  Accordingly, this motion is also DENIED.

### III.  RMS and NEJGID's Motions *In Limine* (dkt. ##194, 195)

Defendants RMS and NEJGID each filed the same boilerplate motions in limine, listing 14 "motions," which simply ask the court to apply the Federal Rules of Evidence in its rulings.  The "motions" are completely divorced from any of the proposed evidence sought to be admitted in this case.  With the acknowledgement that the court will apply the Federal Rules of Evidence, these motions are DENIED without prejudice to defendants raising specific challenges, through the court will consider defendants' failure in raising such issues timely in proper motions *in limine* in ruling on such future requests.

ORDER

IT IS ORDERED that:

1)  Plaintiff GQ Sand LLC's motion *in limine* no. 1 (dkt. #204) is DENIED.

2)  Plaintiff's motion *in limine* no. 2 (dkt. #205) is RESERVED.

3)  Plaintiff's motion *in limine* no. 3 (dkt. #206) is RESERVED.

4)  Plaintiff's motion *in limine* no. 4 (dkt. #207) is GRANTED as unopposed.

5)  Plaintiff's motion *in limine* no. 5 (dkt. #208) is RESERVED.

6)  Defendant Conley Bulk Services, LLC's motion *in limine* no. 1 (dkt. #180) is RESERVED.

7)  Defendant CBS's motion *in limine* no. 2 (dkt. #184) is DENIED.

8)  Defendant CBS's motion *in limine* no. 3 (dkt. #198) is DENIED.

9)  Defendant Range Management Systems, LLC's motions *in limine* (dkt. #195) are DENIED.

10)     Defendant NEJGID, LLC's motions *in limine* (dkt. #194) are DENIED.

Entered this 20th day of June, 2016.

BY THE COURT:


/s/

_____
WILLIAM M. CONLEY
District Judge