IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────

GQ SAND, LLC,

        Plaintiff and Counterclaim Defendant,    OPINION AND ORDER

  v.

                                                                                      15-cv-152-wmc

CONLEY BULK SERVICES, LLC,

        Defendant and Counterclaim Plaintiff,

RANGE MANAGEMENT SYSTEMS, LLC, and

        Defendant and Counterclaim Plaintiff,

  and

NEJGID, LLC,

        Defendant and Counterclaim Plaintiff.
───────────────────────────────────────────

Consistent with its June 10, 2016, order (dkt. #219), the court heard argument yesterday by telephone on certain renewed, merits-based challenges contained in the opposition of defendants Conley Bulk Services, LLC ("CBS"), Range Management Systems, LLC ("RMS"), and NEJGID, LLC to plaintiff GQ Sand, LLC's recently granted motion to amend its complaint to add a fraud claim against all defendants and a negligent misrepresentation claim against defendant RMS, as well as a conspiracy claim against all defendants. (2d Am. Compl. (dkt. #152-1).) GQ Sand was represented by Nicholas Watt, while defendant CBS was represented by Mary Turke and Tanya Salman, and defendants RMS and NEJGID were represented by William Puls and Kolter Jennings.

While GQ Sand follows in a long line of plaintiffs who attempt to turn what appears a straightforward contract dispute into a sordid tale of fraud and deceit by tacking on a series of tort claims, the allegations of misrepresentation here are far too entwined in the essential terms of the parties' contract to escape the Wisconsin economic loss doctrine.  Still, the court will allow plaintiff to proceed with a claim for breach of the duty of good faith and fair dealing against RMS based on an alleged representation that RMS would deliver rail cars to Hixton by March 3, 2015, after the Rail Delivery Agreement was signed, which in turn allegedly induced GQ Sand not to take steps to cure its potential breach of the parties' agreement.  Regardless, plaintiff's previously pled tortious interference with contract claim forms the underlying basis to support plaintiff's conspiracy claim.  Accordingly, the court will dismiss the negligent misrepresentation and fraud claims, but will allow plaintiff to proceed on its conspiracy claim against all defendants at trial.[1]

OPINION

In response to plaintiff's motion for leave to amend its complaint, defendants point out that the *only* misrepresentations alleged in the second amended complaint were made by RMS.  Furthermore, defendants contend that the misrepresentations relate to RMS's performance of the Rail Delivery Agreement and, therefore, are barred by the economic loss doctrine because they are interwoven, not extraneous, to the contract.

---

[1] Consistent with this ruling, defendants are relieved of any obligation to file a further response to Counts XI-Negligent Misrepresentation (¶¶ 154-159) and X-Fraud (¶¶ 146-153).  Defendants must, however, file an answer to Counts IX-Conspiracy (¶¶ 141-145) and XII-Indemnification (¶¶ 160-166) on or before Wednesday, June 22, 2016.

(CBS's Opp'n (dkt. #154) 6-7 (citing *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 27, 283 Wis. 2d 555, 699 N.W.2d 205); R-N's Opp'n (dkt. #155) 4-5.)

In its reply in support of its motion to amend, GQ Sand implicitly conceded (and at yesterday's telephonic hearing, explicitly conceded) that it is asserting no claim of an actionable misrepresentation by CBS or NEJGID, except as alleged co-conspirators in RMS's misrepresentation, a separate claim to which the court will shortly return. Instead, GQ Sand focuses solely on alleged negligent and fraudulent misrepresentations by defendant RMS.

As for the alleged negligent misrepresentation, GQ Sand contends that during the period leading up to the execution of the Rail Delivery Agreement, RMS was negligent in representing "to GQ Sand that it could move 30,000 tons of frac sand from Wisconsin to Texas over four months with 20 covered hopper rail cars." (GQ Sand's Reply (dkt. #159) 4 (citing 2d Am. Compl. (dkt. #152-1) ¶ 156).) Even assuming that RMS was negligent in making this represention before the contract was signed, this claim for negligent misrepresentation is, as defendants argue, plainly barred by the Wisconsin economic loss doctrine. As an initial matter, as GQ Sand's counsel again acknowledged during today's hearing, this alleged misrepresentation was *negligent*, instead of intentional, which dooms it as an exception to the Wisconsin economic loss doctrine. *See All-Tech Telecom, Inc., v. Amway Corp.*, 174 F.3d 862, 865-66 (7th Cir. 1999) (negligent misrepresentation claims are not an exception to the Wisconsin economic loss doctrine); *Kaloti Enter.*, 2005 WI 111 at ¶ 42 (explaining the first of requirement of an exception under the economic loss doctrine is that "there was an intentional misrepresentation").

3

Even if this were not so, GQ Sand utterly fails to address how this alleged tortious act is not interwoven into the terms of the contract. Indeed, the negligent misrepresentation claim itself *confirms* the very purpose of the Rail Delivery Agreement was to secure rail transportation for 30,000 tons of frac sand from Wisconsin to Texas. As such, the court agrees with defendants that plaintiff's negligent misrepresentation or fraud claim is barred by the economic loss doctrine. *Kaloti*, 2005 WI 111 at ¶ 42 (the exception concerns "matters whose risk and responsibility did not relate to the quality or the characteristics of the goods for which the parties contracted or otherwise involved performance of the contract"). Indeed, GQ Sand's negligent misrepresentation claim is a model of a guarantee or term that could (and under the Wisconsin economic loss doctrine, should) have been expressly negotiated and included in the terms of the parties' Rail Delivery Agreement by requiring RMS to delivery sufficient rail cars to accomplish the movement of 30,000 tons of frac sand from Wisconsin to Texas over four months. Having chosen to require a specific number of rail cars be delivered instead, GQ Sand cannot impose an additional obligation under RMS by bringing a tort claim, even if RMS negligently represented that 20 hopper rail cars would be sufficient to accomplish the purpose of the Agreement.

GQ Sand's post-contract fraud claim differs in a number of material respects from its barred negligent misrepresentation claim. First, the claim is one for *intentional* misrepresentation: "RMS and its conspirators, knew that this [misrepresentation was] false." (2d Am. Compl. (dkt. #152-1) ¶ 148.) Second, the claim is in the alternative to plaintiff's principal allegations that RMS agreed to amend or modify the parties' Rail

Delivery Agreement to require RMS to deliver its rail cars to Hixton, Wisconsin, by March 3, 2015.  In contrast, defendants maintain that RMS never undertook this obligation, which would have required a deposit of $100,000 and entry into a "new Origin & Destination Rider."  If the jury finds that there was in fact a modification of destination under the Agreement, obviously an intentional fraud claim cannot go forward as it would be barred by the economic loss doctrine.  If the jury accepts defendant's position that no such amendment or modification took place, however, and no contractual obligation to redirect rail cars existed, then GQ Sand at least arguably could proceed on its claim that RMS intentionally misrepresented its willingness to redirect rail cars to Hixton, knowing both that it would not do so and would cause GQ Sand to rely to its detriment on RMS's misrepresentation otherwise.

Nevertheless, allowing a party to proceed with an intentional misrepresentation claim that amounts to an asserted amendment to an essential provision of the contract is troubling under the Wisconsin economic loss doctrine.  This is all the more troubling in a case like this, where the contract includes an integration clause providing that "[t]his Agreement may not be amended, supplemented, changed, or modified, except by agreement in writing signed by both of the undersigned parties hereto." (Quisling Decl., Ex. 5 (dkt. #56-5) § 9.)

Since no such writing was ever signed by both parties amending the terms of the agreement, there could not have been an enforceable amendment, nor under the Wisconsin economic loss doctrine can GQ Sand manufacture an intentional fraud claim out of RMS's alleged misrepresentation as to its willingness to ignore a basic term

involving performance of the contract like the point of delivery of the rail cars. This does not, however, leave GQ Sand with no remedy under Wisconsin law if it can establish that RMS strung it along in bad faith in order to insure a failure to cure the Sand Delivery Agreement, since that conduct may well be viewed as a breach of a duty of good faith and fair dealing under the contract itself. Accordingly, while the court will dismiss the fraud claim, it will allow GQ Sand to proceed against RMS for that conduct by expanding its breach of duty of good faith and fair dealing claim to include defendant RMS.

The fact that the misrepresentation claims are dismissed does not mean that the conspiracy claim goes away. As defense counsel acknowledged during oral argument, plaintiff's tortious interference with contract claim serves as a separate underlying wrongful act for GQ Sand's conspiracy claim. *See Brew City Redevelopment Grp., LLC v. Ferchill Grp.*, 2006 WI 128, ¶ 37, 297 Wis. 2d 606, 724 N.W.2d 879 (analyzing claim for conspiracy to intentionally interfere). As such, the court will allow plaintiff to pursue its conspiracy claim against all three defendants at trial.

Finally, the court notes defendant RMS's assertion that it was "never in the position to perform on the Rail Delivery Agreement because GQ Sand failed to secure lines in Tomah, Wisconsin," which would render GQ Sand's claim for indemnification meritless. (R-N's Opp'n (dkt. #155) 5.) For the reasons previously provided in the court's opinion on the parties' cross-motions for summary judgment, the court has reserved on whether to grant summary judgment *to plaintiff* on its breach of contract claim. (6/10/16 Op. & Order (dkt. #221) 32.) This finding certainly undermines RMS's argument that GQ Sand's claim to indemnification is futile. In fairness to RMS,

6

however, plaintiff's indemnification claim really concerns the proper *remedy* should the court allow the jury to find and the jury finds that RMS breached the Rail Delivery Agreement. Therefore, an indemnification claim probably need not have been pled as a separate claim i, but the court will not strike it for what it is worth.

## ORDER

IT IS ORDERED that:

1) Plaintiff GQ Sand's claims under Counts XI - Negligent Misrepresentation (dkt. #152-1 at ¶¶ 154-59) and X – Fraud (*Id*., ¶¶ 146-53) against defendant RMS are DISMISSED and defendants need not respond to those claims further.

2) Plaintiff GQ Sand may proceed with its claims under Counts IX – Conspiracy (¶¶ 141-46) against all three defendants, and XII – Indemnification (¶¶ 160-66) against defendant RMS, and defendants must file and serve an answer to those claims on or before Wednesday, June 22, 2016.

Entered this 22nd day of June, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge